## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | |
| Plaintiff, | |
| v. | Civil Action No. 1:19-cv-5727-AT |
| FLEETCOR TECHNOLOGIES, INC., *et al.*, | |
| Defendants. | |

## JOINT DISCOVERY STATEMENT REGARDING
## PLAINTIFF FTC'S FIRST SET OF REQUESTS FOR PRODUCTION

Pursuant to this Court's Standing Order, the Parties submit their respective positions regarding the custodians to be used to identify documents responsive to eight of the FTC's Requests for Production to FleetCor.  The Parties have met and conferred telephonically a number of times in an attempt to reach an agreement, but have been unable to do so.  FleetCor also submits its position regarding the search terms to be used to identify responsive documents. The FTC does not believe that the search term dispute is ripe under the Court's Standing Order.  The FTC's requests at issue (Nos. 12, 13, 14, 16, 17, 18, 21, 29) and FleetCor's responses are attached as Exhibit A.  The Parties' respective proposals are attached as Exhibits B and C.

## FLEETCOR'S POSITION

This dispute arises out of the FTC's demand that FleetCor search the records of **33** custodians to respond to eight Requests for Production.  This demand is far outside traditional discovery standards and violates the principles of burden and proportionality. The number is particularly unreasonable in light of the overwhelming discovery FleetCor has provided to date (including email searches from 37 custodians) and the marginal relevance of the eight remaining requests.

As an initial matter, model discovery orders from courts across the country confirm that the FTC's demand is many times greater than the number of custodians courts consider presumptively reasonable for the *entirety* of discovery. *See, e.g.*, U.S. Court of Appeals for the Federal Circuit, E-Discovery Model Order ¶ 10 (**five** email custodians); U.S. Dist. Ct., E.D. Mich., Model Order Relating to the Discovery of ESI ¶ 2.04(f) (**ten** ESI custodians); *cf.* District of Delaware, Default Standards for Discovery ¶ 3(a) (disclose "[t]he **10** custodians most likely to have discoverable information").  And even in highly complex cases, courts have agreed that far fewer custodians are proper.  *In re Arby's Rest. Grp. Litig.*, 2018 WL 8666473, at *2–3 (N.D. Ga. Aug. 16, 2018) (**six** custodians).[1] The Court should not depart from these norms here.

---

[1] *See also, e.g.*, *Enslin v. Coca-Cola Co.*, 2016 WL 7042206 (E.D. Pa. June 8, 2016) (**ten** custodians, rather than plaintiffs' demand for 48); *Nevro Corp v. Bos. Sci. Corp.*, 2017 WL 2687806, at *3 (N.D. Cal. June 22, 2017) (**seven** custodians);

**First**, this custodial search is not being used to respond to the majority of the FTC's requests.  Rather, it is for only eight of the FTC's 32 litigation requests, and it constitutes a fraction of FleetCor's responses on those (and other) requests.

**Second**, FleetCor has already provided an overwhelming amount of discovery.  FleetCor produced 100,000 documents and 200 gigabytes of data during the investigation, based on ESI searches from **37** custodians.  In the litigation, FleetCor has produced an additional 160,000 documents, spanning 760,000 pages and 100 gigabytes.  It will be producing more than 1 million additional documents imminently. The new custodians are intended to fill gaps.[2]

**Third**, the FTC's remaining requests are only marginally relevant.  For example, the FTC seeks "all documents" related to "any" "proposals regardless whether implemented, to increase fees," RFP 12, and demands 15 custodians to fulfill this request, Ex. C.  But proposals to raise fees that were *not* implemented are not relevant to a case about actual conduct.  And even for proposals that were implemented, increasing fees is not a violation of the FTC Act. *See also id.* at RFP

*Fred Hutchinson Cancer Research Ctr. v. Branhaven, LLC*, 2011 WL 11565809, at *1 (E.D. Va. Dec. 23, 2011) ("**five** custodians").  In the only case cited by the FTC (*infra* n.5), the 38 custodians ordered was much closer to the number offered by defendants (31) than demanded by plaintiffs (785).

[2] The FTC misunderstands the import of the pre-litigation productions.  While, those productions—which FleetCor authorized the FTC to use in the litigation—do not negate the need for *any* new discovery, the substantial volume of documents already produced on these precise issues of fees, discounts, complaints, and surveys undermines the FTC's request for 32 more custodians, for a total of 58.

13 (seeking documents about "proposed" "changes" to fee disclosures).  FTC is also seeking all documents relating to complaints from consumers, business partners, or other third parties.  RFP 18.  FleetCor is producing consumer complaints directly; all that remains are unverified third-party complaints that are not probative of anything (let alone admissible).  The FTC's demand for 33 custodians to fulfill just this portion of Request 18 is unjustified.

FleetCor has proposed reasonable terms and custodians for each request.[3] *See* Ex. B.  The custodians are executives with decision-making authority in the business units relevant to each particular request.  The FTC has not articulated why additional custodians are necessary for any specific request.  FleetCor has already spent more than $400,000 on data collection efforts and has estimates showing that the cost of responding to the remaining requests is more than $350,000, before taking into account a single custodian or term and excluding the legal expense to review the documents. The burden is self-evident.[4]  FleetCor respectfully requests that the Court enter an order limiting the FTC's few remaining requests to the reasonable search terms and custodians FleetCor proposes in Exhibit B.

---

[3] The search term issue is ripe:  FleetCor proposed its search terms to the FTC on the phone weeks ago and discussed them a second time.  The FTC's attempt to delay that issue is inconsistent with its attempt to fault FleetCor for not "quantify[ing] the actual burden of producing additional documents from these custodians."  That burden can only be fully quantified with terms included.
[4] FTC has not decreased the burden by demanding custodians for only 8 RFPs. FleetCor is responding fully to the other RFPs with one million other documents.

## FTC'S POSITION

The Court's task "is to determine, on a case-specific basis, the appropriate scope of discovery." *Arby's*, 2018 WL 8666473, at *1; *see also* FRCP 26(b)(1). Here, the FTC's custodian request, *see* Ex. C, is proportional to the specific needs of the case—where the FTC is seeking to enforce the FTC Act and return hundreds of millions of dollars wrongly taken from consumers over many years through FleetCor's vast fuel-card business. It also is consistent with other complex cases.[5] As explained below, FleetCor's objections fail for three reasons: *First*, FleetCor has not presented any "concrete data" to show how the FTC's request would be burdensome. *Arby's* at *3. *Second*, FleetCor incorrectly suggests that two-year-old pre-suit productions—which did not include many key personnel—are a sufficient response to the RFPs at issue. *Third*, FleetCor's own proposal is not proportional by any measure, particularly given FleetCor's representations about the large number of relevant internal divisions and high turnover of those divisions' leaders.

The FTC's request includes only the custodians needed to cover the individual defendant and relevant internal divisions for the applicable period (May 15, 2014 to present). Defendant Clarke and Cindy Owen, his assistant who routinely sent and received his emails, are necessary custodians for each RFP because their

---

[5] *E.g.*, *Cty. of Cook v. Bank of Am. Corp.*, 2019 WL 5393997 (N.D. Ill. Oct. 22, 2019) (38 custodians). By contrast, *Arby's* involved a discrete event (data breach) that principally affected employees in one division (IT). *See Arby's*, at *2.

documents bear directly on Clarke's knowledge of and participation in the underlying conduct (and neither was a pre-suit custodian). The other custodians cover seven internal divisions that FleetCor itself identified as the "primary lines of business responsible for FleetCor's fuel cards" and "the key shared business units that have significant responsibilities related to its U.S. fuel card business." For each, the FTC has requested searching the senior leader (who FleetCor frequently replaced) and a select few critical mid- or lower-level custodians. The latter custodians occupy unique roles,[6] are closer to the customer, and would be privy to information that does not "rise to the attention of the" senior leaders. *Id.* at *2.

FleetCor does not dispute that each custodian has relevant materials.[7] And the FTC has reduced any burden by limiting its request to (1) internal divisions relevant to specific RFPs, (2) documents from the period when custodians were in relevant roles, and (3) a "refresh" for pre-suit custodians to cover recent documents.

In objecting to the FTC's request, FleetCor never attempts to quantify the actual burden of producing documents from these custodians. FleetCor instead relies "on assumptions rather than concrete data." *Id.* at *3. For instance, although

---

[6] The Customer Service custodians are responsible for different key functions (*e.g.*, call center, operations, etc.). Similarly, the Sales custodians are responsible for each of FleetCor's sales channels (*e.g.*, outbound telesales, field sales, etc.).

[7] FleetCor attempts a side-door attack on relevance, but FleetCor has already agreed to search for responsive documents for these RFPs, all of which go to the heart of Defendants' unlawful fee and billing practices and/or their knowledge.

FleetCor asserts that the "burden is self-evident" based on a rote custodian count, it mostly reflects frequent employee turnover and short tenures—16 custodians are current or former leaders of the seven key divisions during the applicable period.

FleetCor also argues that it need not search for admittedly relevant material now because it made pre-suit productions two years ago. But this misses the mark. FleetCor's pre-suit productions are stale and did not cover many of the topics now at issue (*e.g.*, prior investigations). In addition, many senior leaders who possess critical documents, including Clarke, were not pre-suit custodians. And the fact that the FTC is now seeking custodial searches only for eight RFPs favors the FTC's position, not FleetCor's, because it significantly narrows the scope of those searches.

Finally, FleetCor's proposal does not cover all the divisions that FleetCor says are relevant (*e.g.*, no "Credit/Risk Management" custodian); has major temporal gaps (*e.g.*, no NAL custodian after 2017); inexplicably includes some senior leaders but not others; and omits lower-level employees entirely. FleetCor also offers fewer custodians than the 12 fact depositions ordered by the Court, impairing the FTC's ability to depose witnesses.  For these reasons, the FTC respectfully asks the Court to order FleetCor to search for documents using the custodians in Exhibit C.[8]

---

[8] The search-term dispute is not ripe because FleetCor first shared its full list of proposed terms last week in a draft of *this submission*; the parties have not conferred. Before that, FleetCor insisted for months that the parties could not discuss search terms until custodians were decided. The FTC is eager to engage on this issue, but FleetCor's narrow and untested terms are only a starting point.

Dated:  July 24, 2020

THOMAS C. KOST
Tel: (202) 326-2286
E: tkost@ftc.gov
BRITTANY K. FRASSETTO
Tel: (202) 326-2774
E: bfrassetto@ftc.gov
GREGORY J. MADDEN
Tel: (202) 326-2426
E: gmadden@ftc.gov
CHRISTOPHER B. LEACH
Tel: (202) 326-2394
E: cleach@ftc.gov
THOMAS E. KANE
Tel: (202) 326-2304
E: tkane@ftc.gov

Federal Trade Commission
Division of Financial Practices
600 Pennsylvania Avenue, NW
Mail Stop CC-10232
Washington, DC 20580
Fax: (202) 326-2752

MICHAEL A. BOUTROS
Ga. Bar No. 955802
Federal Trade Commission
Southeast Region
225 Peachtree Street NE, Suite 1500
Atlanta, GA 30303
Phone: (404) 656-1351
Email: mboutros@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

Respectfully submitted,

 */s/ Michael A. Caplan*
Michael A. Caplan
Georgia Bar No. 601039
Jessica A. Caleb
Georgia Bar No. 141507

**CAPLAN COBB LLP**
75 Fourteenth Street, NE, Suite 2750
Atlanta, Georgia 30309
Tel: (404) 596-5600
Fax: (404) 596-5604
mcaplan@caplancobb.com
jcaleb@caplancobb.com

***Counsel for All Defendants***

Mark D. Hopson, admitted *pro hac vice*
Benjamin M. Mundel, admitted *pro hac vice*

**SIDLEY AUSTIN LLP**
1501 K Street, N.W.
Washington, DC 20005
Tel:  (202) 736-8000
Fax: (202) 736-8711
mhopson@sidley.com
bmundel@sidey.com

***Counsel for FleetCor Technologies Inc.***

## Exhibit A

### Request No. 12:

**Request:**  All Communications and Documents relating to any strategies, methods, plans, tests, or proposals, regardless whether implemented to increase fees, including by enrolling Consumers in optional programs, or to charge new or different fees to Consumers using Your Fuel Cards.

**Response:**  FleetCor objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case because it seeks materials without regard to their potential relevance to the claims asserted. For example, it seeks information about fees that are not challenged in the FTC's complaint and not part of this case and about hypothetical fee proposals that were not implemented and not charged to consumers. FleetCor further objects to this Request because it seeks information that is protected from disclosure by the attorney-client privilege or the work product protection doctrine, such as any strategies, methods, plans, tests, or proposals, which were not implemented but for which FleetCor sought and/or received legal advice.

FleetCor has already conducted a reasonable and proportionate search for documents related to fee initiatives and produced to the FTC numerous such documents. FleetCor incorporates by reference responsive documents it produced to the FTC in response to the CID.

[Chart identifying previously produced document omitted]

**Request No. 13:**

**Request:**  All Communications and Documents relating to the manner in which You disclose fees You charge Consumers in connection with Your Fuel Cards, including any proposed or enacted changes to the manner in which You disclose such fees to Consumers.

**Response:**  FleetCor objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case because it seeks materials without regard to their potential relevance to the claims asserted. For example, it requires FleetCor to produce all documents related to the manner in which it discloses fees including proposed changes even if those were not enacted. Proposed disclosure language that was not made to consumers cannot be subject to challenge in this case FleetCor further objects to this Request because it seeks information that is protected from disclosure by the attorney-client privilege or the work product protection doctrine, such as proposed changes for which FleetCor sought and/or received legal advice.

FleetCor also objects to the Request as duplicative because it asks for documents that are called for by other Requests and that were part of FleetCor's CID production to the FTC. FleetCor incorporates by reference the other documents it

has produced in response to these Requests as well as the following documents

produced as part of the CID:

[Chart identifying previously produced document omitted]

FleetCor will conduct a reasonable and proportionate search for additional

non-privileged and responsive documents.

**Request No. 14:**

**Request:**  All Communications and Documents relating to any strategies,

methods, plans, tests, or proposals, regardless whether implemented, to decrease or

eliminate rebates and discounts available to Consumers using Your Fuel Cards.

**Response:**  FleetCor objects to this Request on the grounds that it is overly

broad, unduly burdensome, and not proportional to the needs of the case because it

seeks materials without regard to their potential relevance to the claims asserted. For

example, it seeks materials about policies that were not implemented and materials

about decreasing or eliminating rebates and discounts available to Consumers which

are not the subject of this Action. It also seeks information not related to any

allegations in the complaint. FleetCor is willing to meet and confer with the FTC to

clarify the scope of this Request.

**Request No. 16:**

**Request:**  All Communications and Documents relating to Consumer surveys regarding Your Fuel Cards, including surveys conducted by third parties, and any summaries or analyses of such surveys.

**Response:**  FleetCor objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case because it seeks materials without regard to their potential relevance to the claims asserted. For example, the FTC has not limited this Request to consumer surveys about issues relevant to the Action. The burden of researching for and producing all of these surveys is not proportionate to the needs of this case. FleetCor further objects to this Request because it seeks documents not within its possession, custody, and control.

FleetCor has also produced substantial survey data already as part of the CID and incorporates those documents here by reference.

Subject to these objections, FleetCor will not search for or produce documents responsive solely to this Request. FleetCor is willing to meet and confer with the FTC to clarify the scope of this Request to determine if it is seeking particular categories of survey documents that are relevant and available.

**Request No. 17:**

**Request:**  All Documents relating to any analysis, review, research, or study regarding the costs or other barriers that affect whether Consumers switch fuel card providers or the method of payment for fuel.

**Response:**  FleetCor objects to this Request as it is not relevant to any party's claims or defenses in this case.

FleetCor will conduct a reasonable and proportionate search for any responsive documents relevant to the claims in asserted in this Action.

**Request No. 18:**

**Request:**  All Documents relating to complaints from Consumers, Your business partners, or other third parties, including the complaints themselves, about costs, fees, savings, fraud controls, fraudulent or unauthorized charges, payments, or billing associated with Your Fuel Cards, and Your responses thereto.

**Response:**  FleetCor objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case because it seeks materials without regard to their potential relevance to the claims asserted. Specifically, complaints from third parties that are not Consumers cannot possibly be relevant to this case and producing those documents would not be proportionate to the needs of this case.

FleetCor further objects to this Request because it seeks documents not within its possession, custody, and control.

FleetCor also incorporates by reference documents produced to the FTC as part of the CID:

[Chart identifying previously produced document omitted]

FleetCor will conduct a reasonable and proportionate search for additional consumer complaints related to the issues in this case and within FleetCor's custody or control.

**Request No. 21:**

**Request:**  All non-duplicative manuals, training materials, scripts, videos, written instructions, job aids, or other informal guidance materials relating to communicating with Consumers about Your Fuel Cards, including any such materials used by Your sales and marketing employees or Your customer service representatives.

**Response:**  FleetCor objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case because it seeks materials without regard to their potential relevance to the claims asserted. Specifically, it seeks training materials that have nothing to do with the fee and pricing allegations at issue in this case.

FleetCor will conduct a reasonable and diligent search for responsive materials that relate to the fee and pricing allegations in the FTC's complaint.

FleetCor also incorporates by reference the documents it produced in response to the FTC's CID Request for Production F.

**Request No. 29:**

**Request:** All Documents relating to any internal or third-party investigations, audits, or reviews regarding Your Fuel Cards, including compliance reports or memoranda in final or draft form.

**Response:** FleetCor objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case because it seeks materials without regard to their potential relevance to the claims asserted. For example, it broadly seeks documents for issues not relevant to the claims asserted by the FTC in this Action. FleetCor objects to this Request because it seeks documents subject to the attorney-client privilege and work-product privilege, such as documents related to investigations, audits, or reviews wherein FleetCor sought and/or received legal advice. Subject to these objections, FleetCor will not produce documents in response to this Request.

**Exhibit B**

| RFP | FleetCor Proposed Custodians | FleetCor Proposed Search Terms |
|---|---|---|
| #12:  strategies, methods, or proposals, regardless whether implemented, to increase fees | Senior executive responsible for fee analysis and fee initiatives:<br><br>Yvette Chen (2014-present) | (Strategy OR method OR plan OR test OR proposal) w/5 ("fee increase") |
| #13: documents related to the way FleetCor discloses fees | CEO:<br>Ron Clarke<br><br>Senior leaders from each of the US fuel card business units:<br>Todd House (NAL; 2013-2017)<br>Ron Leidenfrost (NAP 2013-2020)<br>Paul Baran (NAT 2014-present) | fee w/5 disclos! |
| #14: strategies, methods, or proposals, regardless whether implemented, to decrease or eliminate rebates or discounts | Senior executive responsible for revenue analysis and initiatives:<br>Yvette Chen (2014-present)<br><br>Senior leaders from each of the US fuel card business units:<br>Todd House (NAL; 2013-2017)<br>Ron Leidenfrost (NAP 2013-2020)<br>Paul Baran (NAT 2014-2020) | (Strategy OR method OR plan OR test OR proposal) w/5 (("rebate or discount") & w/5 ("decrease" or "eliminate")) |

| RFP | FleetCor Proposed Custodians | FleetCor Proposed Search Terms |
|---|---|---|
| #16:  Communication related to consumer surveys | Senior Customer Experience executive responsible for customer surveys (surveys produced separately)<br><br>Todd Sale (2011-2020) | ("survey") w/3 ("fee" & "rebate" & "discount") |
| #17: documents related to cost barriers that affect whether Consumers switch fuel cards | CEO; plus Senior leaders from each of the US fuel card business units:<br><br>Ron Clarke (CEO)<br>Todd House (NAL; 2013-2017)<br>Ron Leidenfrost (NAP 2013-2020)<br>Paul Baran (NAT 2014-present) | ("cost" or "barriers") w/3 switch |
| 18: Documents related to complaints from consumers, business partners, or other third parties, about relevant issues | CEO:<br>Ron Clarke (CEO)<br><br>Senior leaders from each of the US fuel card business units:<br>Todd House (NAL; 2013-2017)<br>Ron Leidenfrost (NAP 2013-2020)<br>Paul Baran (NAT 2014-present)<br><br>Senior Customer Experience Executive:<br>Todd Sale (2011-2020) | (Complaint) w/5 (("fee" or "rebate" or "discount") & w/5 ("disclosure" or "deception") |
| # 21: manuals, training materials, scripts, videos, | Senior Customer service/experience executive: | ("manuals" OR "training materials" OR "scripts" OR |

| RFP | FleetCor Proposed Custodians | FleetCor Proposed Search Terms |
|---|---|---|
| written instruction relating to commutation with Consumers about Fuel Cards | Todd Sale (2011-2020)<br><br>Senior Sales executives:<br>Paul Citarella (2014-2018)<br>Chuck Lee (2019-present) | "videos" "written instruction") w/3 ((communication) & w/3 ("fraud" or "fuel" or discount" or "rebate")) |
| 29: Documents relating to any internal or third-party investigations | CEO:<br>Ron Clarke<br><br>Senior leaders from each of the US fuel card business units:<br>Todd House (NAL; 2013-2017)<br>Ron Leidenfrost (NAP 2013-2020)<br>Paul Baran (NAT 2014-020) | ("audit" or "investigation") w/3 ("fees" or "discounts" or "rebates") |

**Exhibit C**

| RFP | FTC'S Proposed Custodians |
|---|---|
| No. 12:  Increasing fees | Ronald Clarke<br>Cindy Owen<br><br>Listed custodians from the following divisions:<br>• North American Local (NAL)<br>• North American Partners (NAP)<br>• North American Trucking (NAT)<br>• Revenue Management |
| No. 13:  Disclosing fees | Ronald Clarke<br>Cindy Owen<br><br>Listed custodians from the following divisions:<br>• NAL<br>• NAP<br>• NAT<br>• Revenue Management<br>• Customer Service<br>• Sales |
| No. 14:  Decreasing or eliminating rebates or discounts | Ronald Clarke<br>Cindy Owen<br><br>Listed custodians from the following divisions:<br>• NAL<br>• NAP<br>• NAT<br>• Revenue Management<br>• Customer Service |
| No. 16:  Consumer surveys about relevant issues | Ronald Clarke<br>Cindy Owen<br><br>Listed custodians from the following divisions:<br>• NAL<br>• NAP<br>• NAT<br>• Customer Service |

| RFP | FTC'S Proposed Custodians |
|---|---|
| No. 17:  Barriers to switching fuel card providers | Ronald Clarke<br>Cindy Owen<br><br>Listed custodians from the following divisions:<br>• NAL<br>• NAP<br>• NAT<br>• Customer Service |
| No. 18:  Complaints from consumers, business partners, or other third parties, about relevant issues | Ronald Clarke<br>Cindy Owen<br><br>Listed custodians from the following divisions:<br>• NAL<br>• NAP<br>• NAT<br>• Revenue Management<br>• Customer Service<br>• Sales<br>• Credit/Risk Management |
| No. 21:  Training materials | Ronald Clarke<br>Cindy Owen<br><br>Listed custodians from the following divisions:<br>• Customer Service<br>• Sales |
| No. 29:  Internal or third-party investigations | Ronald Clarke<br>Cindy Owen<br><br>Listed custodians from the following divisions:<br>• NAL<br>• NAP<br>• NAT<br>• Revenue Management<br>• Customer Service<br>• Sales<br>• Credit/Risk Management |

Custodians by Internal FleetCor Division
(* denotes division senior leader; ^ denotes pre-suit custodian)

- **North American Local (RFPs 12, 13, 14, 16, 17, 18, 29):**
  - Todd House (2014 - June 2017)* ^
  - Ashley Thekkekara (July 2017 - July 2018)* ^
  - Nick Izquierdo (Nov 2018 - Present)*
  - Robin Gregg (SVP, Product & Growth Strategy, 2014 - 2016)
  - Mary Rachide (SVP, Product & Growth Strategy, 2017 - 2018)

- **North American Partners (RFPs 12, 13, 14, 16, 17, 18, 29):**
  - Bill Schmit (2014)*
  - David Maxsimic (2016 - Sept 2018)* ^
  - Ron Leidenfrost (Oct 2018 - Present)*
  - Matt Nicholson (SVP, Product Strategy, 2016 - Present)

- **North American Trucking (RFPs 12, 13, 14, 16, 17, 18, 29):**
  - Greg Secord (July 2015 - Aug 2019)* ^
  - Pat O'Donnell (Aug 2019 - June 2020)*
  - Paul Baran (VP, Product Strategy, 2014 - Present) ^

- **Revenue Management (RFPs 12, 13, 14, 18, 29):**
  - Ashley Thekkekara (2014 - 2019)* ^
  - Yvette Chen (2014 - Present)* ^
  - Suresh Yaddanapudi (VP/SVP, Pricing & Yield Strategy, 2014 - Present) ^

- **Customer Service (RFPs 13, 14, 16, 17, 18, 21, 29):**
  - Todd Sale (2014 - Present)* ^
  - Ed Thomas (VP, Operations, 2014 - Present) ^
  - Randall Hon (Director, Operations & Critical Issues, 2014 - 2019) ^
  - Netcha Rodriguez (Director/VP, Call Center, 2014 - Present) ^
  - Pam Coan (Director, Marketing & Customer Experience, 2014 - Present) ^
  - Ami Layton (Manager, Operations Training, 2015 - 2020)

- **Credit/Risk Management (RFPs 18, 29):**
  - Ashley Thekkekara (2014 - 2019)* ^
  - Pavit Bathla (2019 - Present)*
  - Patrick Conolty (Director, NAL Fraud, 2018 - Present)
  - Jennifer Jeffcoat (Director, NAT Fraud, 2014 - Present) ^

- **Sales (RFPs 13, 18, 21, 29):**
  - Paul Citarella (2014 - 2018)*
  - Don Wilczynsku (2018 - 2019)*
  - Chuck Mueller (2019 - 2020)*
  - Steve Casper (VP, Sales Operations, 2014 - 2017)
  - Chet Panhans (VP, Field Sales, 2014 - Present)
  - Valencia Beagles (Director/VP, Outbound Sales, 2014 - Present)
  - Elliot Shoener (Director/VP, Inbound Sales, 2015 - Present)
  - Sean Hudson (Manager, Sales Training, 2014 - 2019)