## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

FEDERAL TRADE COMMISSION,

        *Plaintiff,*

  v.

FLEETCOR TECHNOLOGIES, INC., *and*
RONALD CLARKE,

        *Defendants.*

Case No. 1:19-cv-5727-AT

## DEFENDANTS' REPLY IN SUPPORT OF
## <u>MOTION FOR SUMMARY JUDGMENT</u>

John Villafranco
Jaimie Nawaday
Levi M. Downing
KELLEY DRYE & WARREN LLP
3050 K Street, N.W.
Washington, D.C. 20007
Tel: (202) 342-8400
Fax: (202) 342-8451
*Counsel for Ronald Clarke*

Mark D. Hopson, *pro hac vice*
Benjamin M. Mundel, *pro hac vice*
Daniel J. Hay, *pro hac vice*
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
Tel:  (202) 736-8048
Fax: (202) 736-8711
*Counsel for FleetCor Technologies, Inc.*

Michael A. Caplan, Ga. Bar No. 601039
Jessica A. Caleb, Ga. Bar No. 141507
CAPLAN COBB LLP
75 Fourteenth Street, N.E.
Suite 2750
Atlanta, Georgia 30309
Tel: (404) 596-5600
Fax: (404) 596-5604
*Counsel for All Defendants*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. ii

REPLY ............................................................................................. 1

   I.   FleetCor Is Entitled to Summary Judgment on the FTC's Claim
       for Injunctive Relief. .............................................................. 3

      A.  The FTC Has No Evidence that FleetCor's Current
          Business Practices Are Deceptive or Unfair. ................. 4

      B.  The FTC Lacks Authority to Enjoin Past Conduct. ....................... 9

      C.  The Requested Injunction Is Not Appropriately Tailored to
          the Evidence. ................................................................... 13

   CONCLUSION ............................................................................... 17

# TABLE OF AUTHORITIES

**Page**

## Cases

*AMG Cap. Mgmt., LLC v. FTC*,
141 S. Ct. 1341 (2021)................................................................ 3, 9, 10

*FTC v. AdvoCare Int'l, L.P.*,
No. 4:19-CV-715-SDJ, 2020 WL 6741968 (E.D. Tex. Nov. 16,
2020) ......................................................................................... 10

*FTC v. AMG Servs., Inc.*,
29 F. Supp. 3d 1338 (D. Nev. 2014), *aff'd sub nom. FTC v.
AMG Cap. Mgmt., LLC*, 910 F.3d 417 (9th Cir. 2018), *rev'd*,
141 S. Ct. 1341 (2021)................................................................ 15

*FTC v. Credit Bureau Ctr., LLC*,
937 F.3d 764 (7th Cir. 2019).......................................................9

*FTC v. DIRECTV, Inc.*,
No. 15-cv-01129-HSG, 2018 WL 3911196 (N.D. Cal. Aug. 16,
2018) ......................................................................................... 15

*FTC v. Evans Prods. Co.*,
775 F.2d 1084 (9th Cir. 1985).................................................... 10

*FTC v. Facebook, Inc.*,
No. 20-3590, 2021 WL 2643627 (D.D.C. June 28, 2021) ............... 10, 11, 12

*FTC v. John Beck Amazing Profits, LLC*,
888 F. Supp. 2d 1006 (C.D. Cal. 2012), *aff'd*, 644 F. App'x 709
(9th Cir. 2016) ........................................................................... 13

*FTC v. Shire ViroPharma, Inc.*,
917 F.3d 147 (3d Cir. 2019) ...................................................... 10, 11

*Monopoly Hotel Grp., LLC v. Hyatt Hotels Corp.*,
No. 1:12-CV-1250-JEC-JSA, 2013 WL 12246988 (N.D. Ga.
June 4, 2013) ..............................................................................6

*Monroe v. Standard Oil Co.*,
452 U.S. 549 (1981).....................................................................3

*Reeves v. Astrue,*
    526 F.3d 732 (11th Cir. 2008) ..................................................................... 11

*Todd v. Carstarphen,*
    236 F. Supp. 3d 1311 (N.D. Ga. 2017) ........................................................ 13

*United States v. W. T. Grant Co.,*
    345 U.S. 629 (1953) ..................................................................................... 12

**Statute**

15 U.S.C. § 53(b) .................................................................................... 9, 10, 11

**Legislative Material**

S. Rep. No. 93-151 (1973) ................................................................................. 11

## **REPLY**

In its motion for summary judgment, the FTC sought two remedies: over a half billion dollars in monetary relief and a far-reaching injunction against long-discontinued advertising practices. The FTC now concedes that its request for monetary relief fails as a matter of law. *See* Defs.' Resps. to Pl.'s Statement of Material Facts ("SUMF Resp.") No. 1 (ECF No. 167-3); *see* Defs.' Joint Opp'n to Pl. FTC's Mot. Summ. J. & Mem. of Law Supp. Mot. Summ. J. ("FleetCor Cross-Mot. & Opp.") at 43 (ECF No. 161-1). As FleetCor demonstrated in its cross-motion, the FTC's request for injunctive relief fails too because the FTC cannot enjoin conduct that FleetCor has already abandoned. The FTC's two arguments to the contrary are invalid.

First, the FTC argues that it *is* challenging FleetCor's current conduct. But the evidence shows, without dispute, that:

- The FTC cannot identify a single "advertisement that's currently being distributed to potential customers [that] is deceptive," FTC 3-23-21 30(b)(6) Dep. (Ex. 282[1]) at 536:23–539:9 [SUMF ¶ 2];

- The FTC cannot identify a single "current fee practice[] [that is] unfair," *id.* [SUMF ¶ 2];

- The FTC "makes no contention" that any customer who enrolled in a FleetCor fuel card program under FleetCor's current

---

[1] All exhibits referenced this reply are attached to the Declaration of Thomas Kost (ECF 122-4) (Exhibits 1 to 267), the Declaration of Benjamin Mundel (ECF 161-6) (Exhibits 268 to 314), the Declaration of Brittany Frassetto (ECF 167-4) (Exhibits 315 to 353), and the concurrently filed Supplemental Declaration of Benjamin Mundel (Exhibits 354 to 358).

business practices would be "subject to unfair fee practices" or could be "deceived by FleetCor's advertising practices," *id.* at 538:15–539:9 [SUMF ¶ 2]; and

- FleetCor has overhauled its fee and billing practices over the past 5 years. *See, e.g.*, Rachide Dep. (Ex. 291) at 26:23–27:7, 61:17–67:9, 173:19–174:15 [SAF ¶¶ 111–16]; *see also* FleetCor Cross-Mot. & Opp. 8–9 (collecting additional citations).

These facts and others described in FleetCor's cross-motion preclude any form of injunctive relief as a matter of law.  The FTC's grasping attempt to identify ongoing, allegedly unlawful conduct (contradicting its discovery answers and sworn testimony) finds no support in the evidentiary record.

Second, the FTC argues that it can enjoin FleetCor based upon past conduct alone.  But neither the FTC Act nor equitable principles of injunctive relief authorize an injunction based upon historic conduct.

The FTC's request for injunctive relief fails for yet a third reason. The FTC has failed to carry its burden to show that its proposed injunction is necessary and narrowly tailored.  The proposed injunction filed with the FTC's Motion for Summary Judgment and the FTC's meager, one-paragraph defense of it, FTC Opp. & Reply 30, demonstrates that the FTC cannot craft necessary, narrowly tailored, prospective relief.

For the reasons explained in FleetCor's cross-motion and this reply, FleetCor is entitled to judgment as a matter of law on both of the remedies the FTC seeks.[2]

## I. FleetCor Is Entitled to Summary Judgment on the FTC's Claim for Injunctive Relief.

The FTC's case against FleetCor and Ronald Clarke can be reduced to just two questions:  (1) whether the FTC is entitled to summary judgment that FleetCor's advertising or fee practices were deceptive or unfair and (2) whether the FTC is entitled to enjoin FleetCor's practices.  On the first question, as FleetCor demonstrated in its opposition to the FTC's motion for summary judgment, there are material facts in dispute that preclude summary judgment in the FTC's favor.  The FTC even concedes this point.  As just two examples, the FTC asserts that its Statement of Material Facts Numbers 116 and 231 are "material" but that the evidence is "contradicted" by other testimony.  Pl.'s Reply to Defs.' Resps. to Pl.'s Statement of Material

---

[2] The FTC's reservation to "reinstate its claim" for monetary relief if Congress passes a new statute with retroactive effect, SUMF Resp. No. 1, is without foundation and the contingency (however remote) of that claim being revived will impede the parties' ability to prepare for trial.  Courts apply the law as it stands, not as one party hopes it may be in the future.  *See, e.g.*, *Monroe v. Standard Oil Co.*, 452 U.S. 549, 565 (1981) ("[W]e must deal with the law as it is.").  FleetCor should be granted summary judgment on the FTC's claim for monetary relief based upon the law as it exists today.  *See AMG Cap. Mgmt., LLC v. FTC*, 141 S. Ct. 1341 (2021) (the FTC cannot obtain monetary relief under the statute).

Facts Nos. 116 & 231 (ECF No. 170-2). Similarly, in their response to FleetCor's Statement of Additional Facts, the FTC responds to facts that preclude summary judgment by citing other evidence in its favor—a tacit concession that there is a dispute of fact. Those admissions alone preclude the FTC's motion for summary judgment.

There is no dispute however, that the FTC cannot obtain an injunction: The FTC has conceded that it has no evidence of ongoing or imminent violations of law, which is a prerequisite for the FTC's authority to seek relief under Section 13(b) of the FTC Act and to the Court's authority to enter an injunction. The FTC raises two arguments in opposition to FleetCor's summary judgment motion: that it is challenging FleetCor's current practices, or alternatively, that it does not need to challenge current practices to obtain an injunction. Neither argument has merit.

### A.   The FTC Has No Evidence that FleetCor's Current Business Practices Are Deceptive or Unfair.

As FleetCor made clear in its opening brief, the FTC has failed to identify a single *current* FleetCor advertisement or business practice that it contends violates the FTC Act.[3] In interrogatories, FleetCor asked the FTC

---

[3] To be clear, if this case is permitted to go to trial, FleetCor will show that its advertising and billing practices are not and have never been deceptive or unfair, that it has always taken great efforts to ensure that its policies and practices are understood by customers, and that its initiatives over the past seven years improved advertising and billing practices that already met or

to identify "each and every marketing or advertising statement made by FleetCor that the FTC contends was deceptive" and "each and every instance where the FTC contends that FleetCor made a representation that a customer owed fees, interest, or finance charges that the customer did not in fact owe." *See* Pl.'s 2d Suppl. Resps. & Objs. to Def. FleetCor's First Set of Interrogs. (Ex. 354) at 3–18.  In its response, the FTC identified only historic advertisements not in circulation today and prior disclosure practices that have materially changed in the past five years.  *See id.*; *see also* Wind Report (Ex. 270-A) ¶ 291); FLT_FTCLIT_0833122 (Ex. 306), at 15; Thekkekara 2-19-21 Dep. (Ex. 355) at 152:8–156:24 (FTC attorney admitting FleetCor's new methods are "tremendous" and "a vast improvement") [SAF ¶ 113].

The FTC's corporate representative, senior FTC official Sandhya Brown, also confirmed that the FTC has no evidence that FleetCor's existing practices are unlawful.  She admitted that the FTC "makes no contention one way or the other" about FleetCor's current advertising and business practices, which she further conceded "are not at issue in this litigation." FTC 3-23-21 30(b)(6) Dep. (Ex. 282) at 538:1–539:9 [SUMF ¶ 2].

---

exceeded the requirements of law.  For the purposes of FleetCor's Cross-Motion for Summary Judgment, however, it is enough that the FTC's evidence of deception or unfairness by FleetCor stops years ago.

The FTC contorts Ms. Brown's testimony and argues that she merely stated that the FTC does not challenge any *new* advertisements or business practices initiated after the FTC filed this lawsuit.  *See* FTC Opp. & Reply 27–28.  Although even this admission is sufficient to justify summary judgment because the FTC filed its complaint two years ago, this is simply not what the witness said.  Ms. Brown was asked repeatedly if the FTC could identify a single "advertisement that's currently being distributed to potential customers [that] is deceptive" or a "current fee practice[] [that is] unfair," and she was unable to do so.  FTC 3-23-21 30(b)(6) Dep. (Ex. 282) at 536:23–539:9; *id*. at 538:15–539:9 ("The FTC[] makes no contention one way or the other ….").  While Ms. Brown *also* said that the FTC is not challenging any FleetCor practices "initiated beyond the filing of the Complaint," *id*. at 538:2–14, Ms. Brown never limited her testimony in the way the FTC's lawyers claim.

The FTC also argues—contrary to its admissions in discovery—that current advertisements and fees are, in fact, at issue in this litigation.  *See* FTC Opp. & Reply 27–28.  This argument should not be addressed because the FTC is bound by its discovery answers.  *See, e.g.*, *Monopoly Hotel Grp., LLC v. Hyatt Hotels Corp.*, No. 1:12-CV-1250-JEC-JSA, 2013 WL 12246988, at *5 (N.D. Ga. June 4, 2013).  But, if it is addressed, it fails on the merits.

First, the FTC contends that FleetCor "continue[s] to advertise specific per-gallon savings," FTC Opp. & Reply 27. But the FTC omits that the advertisements are for completely different savings programs, and the FTC has no evidence as to what savings customers who signed up with those programs actually received. *See, e.g.*, Izquierdo Dep. (Ex. 358) at 56:8–70:23 (describing "major changes" FleetCor has made in recent years) [SAF ¶¶ 111–16]; *see also* Miles Decl. (Ex. 8) ¶ 27 (giving a "[l]atest [d]ate" of allegedly fraudulent advertising of mid-2017 to late-2019).[4]

Second, the FTC states, in a conclusory fashion, that FleetCor "still charge[s] customers fees without first obtaining express informed consent." FTC Opp. & Reply 27. But, again, the FTC has no *evidence* of what fees FleetCor is currently charging. None of the FTC's liability evidence applies to current practices. *See* Krosnick Report (Ex. 41) ¶ 53 (only surveying customers through 2019); Miles Decl. (Ex. 8) ¶ 27 (only analyzing savings and fees through 2019). That is critical because, since that time, FleetCor

---

[4] The FTC cites advertisements described at paragraphs 94–98 and 100 of its Statement of Material Facts, but the FTC has no evidence as that any of those advertisements are currently in circulation, because none of them are. In addition, since 2019, FleetCor has implemented a new claims review process and created a claims library of approved marketing statements "[t]o ensure that all claims were substantiated and not misleading" and to track "whether disclaimers were needed if a particular claim would be used." Wind Report (Ex. 270-A) ¶ 292. Even FTC counsel admitted that these new initiatives are "tremendous" and "a vast improvement." Thekkekara 2-19-21 Dep. (Ex. 355) at 152:8–156:24.

enhanced its terms and conditions and obtained new consent from virtually all of its customers. *See* Wind Report (Ex. 270-A) ¶¶ 128–134; FleetCor Cross-Mot. 15–16 [SAF ¶¶ 124–26]. Therefore, the FTC has *no evidence at all* that, under FleetCor's current terms and conditions, customers are unaware of FleetCor's fees and billing policies.

Finally, the FTC asserts that FleetCor "still charge[s] existing customers for add-on programs," but the FTC admits that FleetCor "no longer automatically enroll[s] new customers" in optional programs. FTC Opp. & Reply 27. The FTC has never argued that FleetCor's voluntary opt-*in* programs are unfair. Thus, the FTC is left with speculation that customers who have been enrolled in and paid the fees for a program *for years*—while receiving itemized bills as frequently as every week—are unaware that they are enrolled in these add-on programs. In fact, as part of the enhanced terms and conditions described in FleetCor's cross-motion (at, *e.g.*, 15–16), FleetCor provided additional disclosures around the issue of optional programs. FLT_FTCLIT_0005942 (Ex. 302); FLT_FTCLIT_0004727 (Ex. 300). Nearly all of FleetCor's customers accepted these enhanced disclosures without complaint. *See* Wind Report (Ex. 270-A) ¶ 134 (reporting that < 0.2% of FleetCor customers rejected or requested changes to the enhanced terms and conditions) [SAF ¶¶ 124–26]. The FTC has no evidence at all showing that these long-tenured customers are deceived by their ongoing participation in

valuable and popular optional programs, even after FleetCor provided enhanced disclosure of them, which they accepted by checking a box to affirm that they read and agree to the Terms & Conditions prominently displaying the fee at the top of the first page.  *See* Schoar Liability Report (Ex. 269-A) ¶¶ 156–59; Wind Report (Ex. 270-A) ¶¶ 267–69 (finding no increase in attrition after expiration of free trial period) [SAF ¶ 127]; FLT_FTCLIT_0005942 (Ex. 302); FLT_FTCLIT_0004727 (Ex. 300).

### B.    The FTC Lacks Authority to Enjoin Past Conduct.

The FTC next argues that it can enjoin even ceased conduct without evidence of ongoing or imminent violations of the FTC Act.  But the FTC does not have this authority for two related, yet independent, reasons.

First, Section 13(b) of the FTC Act authorizes the FTC to "seek … a permanent injunction" *only* where it has a basis for concluding that the defendant "is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission."  15 U.S.C. § 53(b)(1).  The Supreme Court confirmed earlier this Term that Section 13(b) of the FTC Act "focuses upon relief that is prospective, not retrospective." *AMG Cap. Mgmt., LLC v. FTC*, 141 S. Ct. 1341, 1348 (2021); *see also FTC v. Credit Bureau Ctr., LLC*, 937 F.3d 764, 774 (7th Cir. 2019) ("Section 13(b) serves a … forward-facing role: enjoining ongoing and imminent future violations.").  Before the FTC may move for injunctive relief under the FTC Act, it must have reason to believe

that the defendant "is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission."  15 U.S.C. § 53(b)(1); *see FTC v. Evans Prods. Co.*, 775 F.2d 1084, 1087 (9th Cir. 1985) (holding that Section 13(b) "contemplate[s] ongoing or future violations" and thus "an injunction will issue only if the wrongs are ongoing or likely to recur").

Section 13(b)'s focus on ongoing or imminent conduct requires the FTC to come forward with "some evidence that the defendant 'is' committing or 'is about to' commit a[] violation" of the FTC Act before it may obtain injunctive relief.  *FTC v. Shire ViroPharma, Inc.*, 917 F.3d 147, 156 (3d Cir. 2019); *see also FTC v. Facebook, Inc.*, No. 20-3590, 2021 WL 2643627, at *18, *23 (D.D.C. June 28, 2021) (granting motion to dismiss on this ground); *FTC v. AdvoCare Int'l, L.P.*, No. 4:19-CV-715-SDJ, 2020 WL 6741968, at *6–7 (E.D. Tex. Nov. 16, 2020) (same).  As the statutory text and precedent make clear, the "is violating, or is about to violate" precondition is a substantive limitation on the FTC's narrow authority to seek injunctive relief—in other words, an element of the FTC's statutory standing.  As the Supreme Court explained in *AMG*:  "[T]he words 'is violating' and 'is about to violate' (not 'has violated') *set*[] *forth when the Commission may request injunctive relief*." 141 S. Ct. at 1348 (emphasis added).  Here, the FTC "request[ed] injunctive relief" when it filed its motion for summary judgment.  At that time (and at

10

all times since filing the complaint), the FTC lacked any evidence that FleetCor "is violating, or is about to violate" Section 5.

The FTC's argument that this requirement applies only at pleading and not summary judgment also makes no sense. It would render the Section 13(b) prerequisites meaningless, since the FTC could simply allege ongoing harm knowing that it would never be put to proof on the allegation. *See* 15 U.S.C. § 53(b) (FTC may seek a permanent injunction only "in proper cases").[5] The FTC does not cite a single example—nor is FleetCor's counsel aware of one—where a statutory element or precondition is not subject to a showing of proof at summary judgment.[6]

---

[5] The FTC's argument is also belied by the FTC's own litigating position in cases where this issue *is* raised at the pleading stage. For example, in *Facebook*, the FTC argued that the "is violating or is about to violate" element of Section 13(b) "[cannot] be reviewed" on a motion to dismiss because the statute " 'confers discretion' on it to decide if such 'reason to believe' exists." 2021 WL 2643627, at *19 (alteration in original) (rejecting the FTC's argument); *see also, e.g.*, *Shire*, 917 F.3d at 159 n.17 (finding that argument "unpersuasive"). In this case, by contrast, the FTC argues that the issue should be decided only on the pleadings, not at summary judgment. The FTC's only consistent position on this question seems to be that it should be able to avoid judicial scrutiny of its determination that injunctive relief is appropriate.

[6] Because the text of Section 13(b) is unambiguous, the Court "need not, and ought not" consider its legislative history. *See, e.g.*, *Reeves v. Astrue*, 526 F.3d 732, 734 (11th Cir. 2008) (quoting *Harry v. Marchant*, 291 F.3d 767, 772 (11th Cir. 2002) (en banc)). If the Court did conclude that it is possible to read Section 13(b)(1) as an unenforceable pleading requirement, however, the legislative history reinforces the limited role of the FTC's authority under Section 13(b). *See, e.g.*, S. Rep. No. 93-151, at 30 (1973) (Section 13(b) "permit[s] the [FTC] to bring an immediate halt to unfair or deceptive acts or

This requirement under the FTC Act is also consistent with equity generally: equity bars a party from seeking to enjoin past conduct. *See United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953). Under this standard a plaintiff cannot obtain an injunction unless it can show "some cognizable danger of recurrent violation, *something more than the mere possibility*" of recurrence. *Id.* (emphasis added).

Yet the FTC does not even try to meet this standard. Instead, the FTC speculates that FleetCor "could revert back to [its prior practices] whenever they wish[]." FTC Opp. & Reply 28. But such speculation that a recurrence is possible is insufficient as a matter of law. *See Facebook*, 2021 WL 2643627, at *18–19 (granting motion to dismiss the FTC's claim for an injunction because even the allegation that Facebook "is likely to reinstitute" anticompetitive practices is insufficient to show that the "conduct is 'about to' occur"). And even if such facts were cognizable in theory, the FTC cites no evidence to support its speculation. Despite deposing a dozen witnesses and obtaining tens of thousands of documents, the FTC has offered no witness testimony or documentary evidence that FleetCor will revert to its prior advertising and fee practices. Instead, there is substantial testimony that FleetCor's changes to its payment processing vendors, card offerings,

---

practices when … [a]t the present time such practices might continue for several years until agency action is completed.").

payment and fee policies, and other practices have been successful.  *See*
FleetCor Cross-Mot. & Opp. 8–9.  These changes go far beyond "voluntary
cessation."  FTC Opp. & Reply 28–29.  The FTC completely lacks evidence to
carry its "burden of proof to show 'by a preponderance of the evidence that
[the requested] form of equitable relief is necessary.' "  *Todd v. Carstarphen*,
236 F. Supp. 3d 1311, 1325 (N.D. Ga. 2017) (alteration in original).

### C.    The Requested Injunction Is Not Appropriately Tailored to the Evidence.

The FTC also has the burden to show that the injunctive relief it seeks
is both "necessary," *id.*, and "narrowly tailored to give only the relief to which
[it is] entitled."  *FTC v. John Beck Amazing Profits, LLC*, 888 F. Supp. 2d
1006, 1011 (C.D. Cal. 2012), *aff'd*, 644 F. App'x 709 (9th Cir. 2016).  Even if
the FTC had the authority to seek an injunction here, it failed to establish
admissible evidence that its proposed injunction is necessary or narrowly
tailored.

The FTC has not presented any evidence that its eighteen-page
injunction is either "necessary" or "narrowly tailored."  *See* Proposed Order
(ECF No. 122-3).  Indeed, the FTC has offered no fact or expert witness to
justify the features of its proposed injunction even at the most general level.
The FTC has offered only a one-paragraph justification for its proposed
injunction in its motion, Pl.'s Mem. of Law Supp. Mot. Summ. J. 40–41 (ECF

No. 132-1), and one more paragraph in its opposition to FleetCor's cross motion, FTC Opp. & Reply 30, with no citation to any record evidence. This is reason enough to grant FleetCor summary judgment on the FTC's request for the injunction.

*First*, even though the FTC seeks a far-reaching injunction that touches virtually every aspect of FleetCor's North American fuel card operations, its liability evidence is limited to just a few discontinued advertisements, out of tens of thousands. *See* FleetCor Cross-Mot. & Opp. 19–20. The FTC offers an unsupported assertion that those advertisements not in evidence "made consistent representations in practically uniform express language." FTC Opp. & Reply 11 (citing nothing); *see also id.* at 6 ("minor differences"). But the FTC has zero evidence to support the counter-intuitive assertion that there is uniformity of content in FleetCor's thousands of advertisements for scores of products across multiple different advertising mediums. By contrast, FleetCor's expert systematically considered and opined that the content of FleetCor advertising was varied in multiple different ways over the years and between fuel card programs. *See* Wind Report (Ex. 270-A) ¶¶ 76–80 (different advertisements "promote different benefits of the cards including: convenience, credit, customization, controls, reporting, overall cost savings, fraud control, per gallon discounts, and more").

The FTC's argument that it can obtain a company-wide injunction based upon a handful of advertisements has already been rejected. For example, in *FTC v. DIRECTV, Inc.*, the court explained that although the FTC does not have to show that every ad is deceptive, it must offer some evidence for "why conclusions about a handful of advertisements can be applied to derive a uniform net impression for an extremely large number of others that vary significantly in format, content and emphasis." No. 15-cv-01129-HSG, 2018 WL 3911196, at *16 (N.D. Cal. Aug. 16, 2018). Just like in *DIRECTV*, the FTC cannot obtain sweeping injunctive relief simply by "characterizing the advertisements at a high level of generality and asserting that conclusions regarding one advertisement apply uniformly to tens of thousands of others." *Id.*[7]

*Second*, the FTC has asked the Court to fundamentally restructure FleetCor's business, to subject FleetCor to an indefinite monitorship, and to retain jurisdiction over the company's business practices for decades. *See, e.g.*, Proposed Order §§ VII, IX, XI, XII (ECF No. 122-3). The FTC made no

---

[7] The since-vacated decision in *FTC v. AMG Services, Inc.* is not to the contrary. In the footnote the FTC relies upon, the district court found (based on the defendants' admission) that certain loan documents were "essentially 'identical.'" 29 F. Supp. 3d 1338, 1342 n.5 (D. Nev. 2014) (quoting defendants' opposition brief), *aff'd sub nom. FTC v. AMG Cap. Mgmt., LLC*, 910 F.3d 417 (9th Cir. 2018), *rev'd*, 141 S. Ct. 1341 (2021). The FTC has no evidence that would support a similar finding here.

15

attempt to justify these forms of injunctive relief which are not even permitted by the governing statute.

The only evidence the FTC cites as supportive of these invasive and costly requirements is a few lines from Defendant Ron Clarke's deposition where he described what he looks for in direct reports. FTC Opp. & Reply 30. The FTC mischaracterizes what it refers to as the "Ron Rule," which is simply the unremarkable position that senior leaders should be empowered to execute in their roles without constant requests for permission from the CEO. *See* Clarke Dep. (Ex. 279) at 55:8–24. There is no evidence that this commonsense leadership principle has ever resulted in a conflict over advertising or disclosure practices. To the contrary, the evidence shows that Mr. Clarke expected senior leadership to support full disclosure. *See, e.g., id.* at 119:18–21 [SAF ¶ 199]. He personally instructed the company's general counsel to convene a committee of senior leaders to investigate and wherever possible improve the company's practices on fees and disclosures. *See* FleetCor Cross-Mot. & Opp. 8–9, 42; Clarke Dep. (Ex. 279) at 85:20–88:17, 89:12–90:3, 285:6–286:13 [SAF ¶¶ 200–01].

The FTC also ignores the fact that FleetCor is a publicly traded S&P 500 Company that generated $2.39 billion in revenue last year. As such, it has in place all of the governance infrastructure that would be required and expected, including an office of general counsel, a compliance office, and an

independent audit committee.  The FTC's lack of evidence justifying the extraordinarily broad injunction it seeks is an additional basis for the Court to grant summary judgment to FleetCor.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' Cross-Motion for summary judgment on both remedies the FTC seeks and enter judgment for Defendants.  Alternatively, Defendants respectfully request that the Court set the earliest possible trial date for any remaining issues.

Dated:  July 12, 2021

Respectfully submitted,

/s/ Mark D. Hopson

John Villafranco
Jaimie Nawaday
Levi M. Downing
KELLEY DRYE & WARREN LLP
3050 K Street, N.W.
Washington, D.C. 20007
Tel: (202) 342-8400
Fax: (202) 342-8451
jvillafranco@kelleydrye.com
jnawaday@kelleydrye.com
ldowning@kelleydrye.com
*Counsel for Ronald Clarke*

Mark D. Hopson, *pro hac vice*
Benjamin M. Mundel, *pro hac vice*
Daniel J. Hay, *pro hac vice*
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
Tel:  (202) 736-8048
Fax: (202) 736-8711
mhopson@sidley.com
bmundel@sidley.com
dhay@sidley.com
*Counsel for FleetCor Technologies, Inc.*

Michael A. Caplan, Ga. Bar No. 601039
Jessica A. Caleb, Ga. Bar No. 141507
CAPLAN COBB LLP
75 Fourteenth Street, N.E.
Suite 2750
Atlanta, Georgia 30309
Tel: (404) 596-5600
Fax: (404) 596-5604
mcaplan@caplancobb.com
jcaleb@caplancobb.com
*Counsel for All Defendants*