# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION, | |
| *Plaintiff,* | |
| v. | Case No. 1:19-cv-5727-AT |
| FLEETCOR TECHNOLOGIES, INC., *and* RONALD CLARKE, | |
| *Defendants.* | |

## DEFENDANTS' OPPOSITION TO FTC'S MOTION TO EXCLUDE SELECT EXPERT OPINIONS OF DR. YORAM (JERRY) WIND

John Villafranco
Jaimie Nawaday
Levi M. Downing
KELLEY DRYE & WARREN LLP
3050 K Street, N.W.
Washington, D.C. 20007
Tel: (202) 342-8400
Fax: (202) 342-8451
*Counsel for Ronald Clarke*

Mark D. Hopson, *pro hac vice*
Benjamin M. Mundel, *pro hac vice*
Daniel J. Hay, *pro hac vice*
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
Tel:  (202) 736-8048
Fax: (202) 736-8711
*Counsel for FleetCor Technologies, Inc.*

Michael A. Caplan, Ga. Bar No. 601039
Jessica A. Caleb, Ga. Bar No. 141507
CAPLAN COBB LLP
75 Fourteenth Street, N.E.
Suite 2750
Atlanta, Georgia 30309
Tel: (404) 596-5600
Fax: (404) 596-5604
*Counsel for All Defendants*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ........................................................................................... 1

BACKGROUND .............................................................................................. 5

LEGAL STANDARD ....................................................................................... 7

ARGUMENT .................................................................................................... 9

    I.    The FTC's Challenges to Professor Wind's Conclusions Are
        Meritless. ............................................................................................. 9

        A.  The FTC Misunderstands Professor Wind's Opinion on
            Customer Buying Centers. .......................................................... 9

        B.  The FTC's Disagreements with a Few Technical Choices in
            Professor Wind's Survey Are No Basis for Exclusion. ................. 12

        C.  The FTC's Challenge to the Natural Experiment Is
            Improper and Rests on a Series of Misrepresentations.............. 16

        D.  Professor Wind's Analysis of FleetCor's Go-to-Market
            Strategy Is Reliable and Helpful to the Court. ........................... 19

        E.  Professor Wind Does Not Offer Legal Conclusions...................... 21

    II.  If Not Summarily Denied, the FTC's Motion Should Be Held in
        Abeyance. ............................................................................................ 22

CONCLUSION................................................................................................ 25

# TABLE OF AUTHORITIES

**Page**

## Cases

*1-800 Contacts, Inc. v. Lens.com, Inc.*,
  722 F.3d 1229 (10th Cir. 2013) ................................................................. 13

*Allison v. McGhan Med. Corp.*,
  184 F.3d 1300 (11th Cir. 1999) ................................................................. 8

*In re Arris Cable Modem Consumer Litig.*,
  327 F.R.D. 334 (N.D. Cal. 2018) ............................................................... 13

*Atl. Allergy & Asthma Clinic, P.A. v. Allergy & Asthma of Atl., LLC*,
  685 F. Supp. 2d 1360 (N.D. Ga. 2010) ...................................................... 13

*Camacho v. Nationwide Mut. Ins. Co.*,
  13 F. Supp. 3d 1343 (N.D. Ga. 2014) ........................................................ 21

*Combe Inc. v. Dr. Aug. Wolff GMBH & Co. KG Arzneimittel*,
  No. 19-1674, 2021 WL 1384750 (4th Cir. Apr. 13, 2021) ............................ 13

*Coyote Portable Storage, LLC v. PODS Enters., Inc.*,
  No. 1:09-CV-1152-AT, 2011 WL 1870593 (N.D. Ga. May 16, 2011) ............................................................................................................. 22

*CTC Commc'ns Corp. v. Bell Atl. Corp.*,
  77 F. Supp. 2d 124 (D. Me. 1999) ............................................................. 1

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ................................................................................. 8

*Diamond Resorts Int'l, Inc. v. Aaronson*,
  371 F. Supp. 3d 1088, 1105 (M.D. Fla. 2019) ........................................... 22

*In re Delta/AirTran Baggage Fee Antitrust Litig.*,
  245 F. Supp. 3d 1343 (N.D. Ga. 2017), *aff'd sub nom. Siegel v. Delta Air Lines, Inc.*, 714 F. App'x 986 (11th Cir. 2018) ........................... 17

*Exim Brickell LLC v. Bariven, S.A.*,
  No. 09-CV-20915, 2011 WL 13131317 (S.D. Fla. Mar. 11, 2011) ............... 11

*Fitzpatrick v. City of Atlanta*,
   2 F.3d 1112 (11th Cir. 1993)..................................................................... 24

*United States ex rel. Fox Rx, Inc. v. Omnicare, Inc.*,
   No. 1:11-cv-962-WSD, 2014 WL 2158412 (N.D. Ga. May 23,
   2014) ........................................................................................................... 23

*FTC v. Direct Benefits Grp., LLC*,
   No. 6:11-cv-1186-Orl-28TBS, 2012 WL 5430989 (M.D. Fla.
   Nov. 7, 2012)..................................................................................................8

*Fuller v. SunTrust Banks, Inc.*,
   No. 1:11-CV-784-ODE, 2019 WL 5448206 (N.D. Ga. Oct. 3,
   2019) ...............................................................................................................9

*Ga. Power Co. v. Sure Flow Equip., Inc.*,
   No. 1:13-CV-1375-LMM, 2016 WL 3870080 (N.D. Ga. Feb. 17,
   2016) ........................................................................................................... 23

*Gaylor v. Ga. Dep't of Nat. Res.*,
   No. 2:11-CV-288-RWS, 2014 WL 4545810 (N.D. Ga. Sept. 12,
   2014) ........................................................................................................... 21

*Guinn v. Norfolk S. Ry.*,
   441 F. Supp. 3d 1319 (N.D. Ga. 2020) ....................................................... 12

*Hickson Corp. v. N. Crossarm Co.*,
   357 F.3d 1256 (11th Cir. 2004)................................................................... 22

*ITT Corp. v. Xylem Grp., LLC*,
   963 F. Supp. 2d 1309 (N.D. Ga. 2013) ....................................................... 17

*Jellibeans, Inc. v. Skating Clubs of Ga., Inc.*,
   716 F.2d 833 (11th Cir. 1983)..................................................................... 13

*McSwain v. World Fuel Servs. Corp.*,
   No. 1:20-CV-21203, 2021 WL 2682269 (S.D. Fla. June 30,
   2021) ........................................................................................................... 17

*In re Namenda Direct Purchaser Antitrust Litig.*,
   331 F. Supp. 3d 152 (S.D.N.Y. 2018) ......................................................... 11

*Pace v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
   No. 1:12-CV-3096-AT, 2014 WL 4976773 (N.D. Ga. Aug. 21,
   2014) ................................................................................................ 12

*Pledger v. Reliance Tr. Co.*,
   No. 1:15-CV-4444-MHC, 2019 WL 4439606 (N.D. Ga. Feb. 25,
   2019) ................................................................................................ 21

*Procter & Gamble Co. v. Colgate-Palmolive Co.*,
   No. 96 Civ. 9123(RPP), 1998 WL 788802 (S.D.N.Y. Nov. 9,
   1998), *aff'd per curiam*, 199 F.3d 74 (2d Cir. 1999) ...................... 1

*Quiet Tech DC-8, Inc. v. Hurel-Dubois UK Ltd.*,
   326 F.3d 1333 (11th Cir. 2003) ......................................................... 8

*Rosenfeld v. Oceania Cruises, Inc.*,
   654 F.3d 1190 (11th Cir. 2011) ....................................................... 13

*Sapuppo v. Allstate Floridian Ins. Co.*,
   739 F.3d 678 (11th Cir. 2014) ......................................................... 23

*SEC v. Avent*,
   No. 1:16-CV-2459-SCJ, 2018 WL 8996270 (N.D. Ga. Mar. 15,
   2018) ................................................................................................ 23

*Smith v. Wal-Mart Stores, Inc.*,
   537 F. Supp. 2d 1302 (N.D. Ga. 2008) ........................................... 13

*Tapatio Springs Builders, Inc. v. Md. Cas. Ins. Co.*,
   82 F. Supp. 2d 633 (W.D. Tex. 1999) ............................................. 11

*United States v. 0.161 Acres of Land*,
   837 F.2d 1036 (11th Cir. 1988) ....................................................... 17

*United States v. Brown*,
   415 F.3d 1257 (11th Cir. 2005) ......................................................... 8

*United States v. Frazier*,
   387 F.3d 1244 (11th Cir. 2004) ......................................................... 7

*United States v. Johnston*,
   322 F. App'x 660 (11th Cir. 2009) ................................................... 21

*United States v. McIver*,
   470 F.3d 550 (4th Cir. 2006)........................................................................ 21

*United States v. Reddy*,
   534 F. App'x 866 (11th Cir. 2013) ........................................................... 8, 13

**Rules**

Fed. R. Evid. 702.......................................................................................... 10

Fed. R. Evid. 702 advisory committee's note to 2000 amendment ...................7

**Other Authorities**

Shari Seidman Diamond, *Reference Guide on Survey Research*, *in*
   REFERENCE MANUAL ON SCIENTIFIC EVIDENCE 359 (Fed. Jud.
   Ctr. 3d ed. 2011).......................................................................................... 15

Wesley J. Johnston, *The Influence of Jerry Wind on
   Organizational Buying Behavior*, *in* 1 LEGENDS IN
   MARKETING: YORAM (JERRY) WIND 285 (Jagdish N. Sheth &
   Robert J. Thomas eds., 2014) ........................................................................2

LEGENDS IN MARKETING: YORAM 'JERRY' WIND (Jagdish N. Sheth
   ed., 2014) ......................................................................................................1

Robert J. Thomas, *Volume Introduction*, *in* 1 LEGENDS IN
   MARKETING: YORAM (JERRY) WIND, at xlii (Jagdish N. Sheth &
   Robert J. Thomas eds., 2014) ..................................................................... 10

## INTRODUCTION

In a last-gasp attempt to backfill its baseless summary judgment motion, the FTC has moved to exclude a limited amount of testimony offered by Dr. Yoram (Jerry) Wind, who Defendants (collectively, "FleetCor") have designated as an expert on marketing, consumer survey design, consumer perception, consumer behavior, and business-to-business marketing. The FTC's motion is meritless and should be denied.

The FTC does not and cannot mount any serious challenge to Professor Wind's qualifications. Professor Wind is one of the world's leading experts on marketing and consumer perception,[1] and his expert opinions have been admitted and relied upon by judges and juries in scores of cases over Professor Wind's long career. *See* Wind CV (Ex. 1 App. H); Wind Prior Dep. & Trial Test. (Ex. 1 App. G); *see also* Pl.'s Resp. to Defs.' Statement of Additional Material Facts (ECF No. 170-3) ¶ 118 (conceding that Professor Wind is "one of the world's leading experts on consumer marketing"); *Procter & Gamble Co. v. Colgate-Palmolive Co.*, No. 96 Civ. 9123(RPP), 1998 WL 788802, at *82 (S.D.N.Y. Nov. 9, 1998) ("Dr. Wind is highly qualified as a

---

[1] *See, e.g.*, LEGENDS IN MARKETING: YORAM 'JERRY' WIND (2014) (Jagdish N. Sheth ed., 2014) (eight-volume treatise identifying Professor Wind as one of the legends of marketing and collecting his scholarship and commenting on his influence on the field of marketing).

market research expert ...."), *aff'd per curiam*, 199 F.3d 74 (2d Cir. 1999).[2]
Professor Wind  has been qualified as an expert in nearly 100 cases, and
either created or shaped the many areas of research that underlie his
opinions in this case.

Professor Wind has been on the faculty of the Wharton School of the
University of Pennsylvania for over 50 years.  Wind Report (Ex. 1) ¶ 10.  He
is currently the Lauder Professor Emeritus and Professor of Marketing.  *Id.*
Professor Wind has authored, co-authored, or edited 30 books and over 300
articles, and has served as an editor of all major marketing journals.  *Id.*
¶¶ 11–12.  For his scholarship, Professor Wind has received the four major
marketing awards; was selected as one of the ten grand Auteurs in
Marketing (2001) and one of the ten Legends of Marketing (2010); and has
been inducted into the Marketing Hall of Fame (2017).  *Id.* ¶ 15.

The FTC also does not and cannot challenge Professor Wind's actual
methodology.  Professor Wind conducted a series of empirical analyses as well
as qualitative reviews of FleetCor and third-party materials.  *See generally*

---

[2] As another leading marketing expert explained, "[t]here can be little
doubt that few will surpass the quantity and impact of publications that
[Professor Wind] has amassed," particularly with regards to the
organizational buying center ("now called business-to-business marketing")
that Professor Wind pioneered.  *See* Wesley J. Johnston, *The Influence of
Jerry Wind on Organizational Buying Behavior*, *in* 1 LEGENDS IN MARKETING:
YORAM (JERRY) WIND 285 (Jagdish N. Sheth & Robert J. Thomas eds., 2014).

Wind Report (Ex. 1) ¶¶ 3–9.  Professor Wind used the same rigor and standards that he brings to his academic work.  *See id.* ¶ 35.  Professor Wind used the overall methodology of "convergence validity" to determine whether the empirical and qualitative evidence indicated that FleetCor's customers were deceived about FleetCor's marketing.  *E.g.*, *id.* ¶¶ 8, 34, 101.

Each of the FTC's challenges is a disagreement with the *conclusions* Professor Wind reached, not his qualifications or his methodology for reaching those conclusions.  These are improper bases under *Daubert* and 702.  Although Defendants have no doubt that the Court will find Professor Wind's testimony both credible and persuasive, at this stage, Defendants need only show that the testimony is not so faulty that it should be excluded.  Professor Wind's testimony easily passes this hurdle, and all the issues raised by the FTC are—at best—possible fodder for cross examination.

In addition to being without merit, the FTC's motion is procedurally improper.  The FTC asks the Court to consider its attack of Professor Wind's conclusions as part of the summary judgment record, *see, e.g.*, Pl.'s Combined Reply Supp. Mot. Summ. J. & Opp'n to Defs.' Cross-Mot. Summ. J. ("FTC MSJ Reply") 6 n.5 (ECF No. 170-1), but the FTC forfeited this argument by not challenging—or even *mentioning*—Professor Wind's opinions and report in its opening motion, *see, e.g.*, Defs.' Joint Opp'n to Pl. FTC's Mot. Summ. J.

& Mem. of Law Supp. Mot. Summ. J. ("FleetCor Cross-Mot. & Opp.") 13–15

(ECF No. 161-1).

In all events, the Court need not decide this motion prior to ruling on

the parties' cross-motions for summary judgment because, even if the Court

struck Professor Wind's report in its entirety, there are still many disputed

material facts that preclude granting summary judgment in the FTC's favor:

- FleetCor discloses all fees and terms throughout its marketing and customer sign-up process to ensure that customers were not confused. *See, e.g.*, Chen 1-27-21 Dep. (Ex. 276) at 116:10–12; Clarke Dep. (Ex. 279) at 85:20–90:3, 285:11–286:13; Rachide Dep. (Ex. 291) at 26:23–27:7, 61:17–67:9; Panhans Dep. (Ex. 289) at 182:10–21; Beagles Decl. (Ex. 271) ¶¶ 4–9; FLT_FTC00340153 (Ex. 299); FLT_FTCLIT_0833122 (Ex. 306); *see also* FleetCor's Statement of Additional Facts (ECF No. 161-3) ¶¶ 26–60.

- FleetCor uses industry-standard methods to disclose industry-standard pricing and fee practices. *See, e.g.*, Morwitz Dep. (Ex. 288) at 216:14–221:5, 232:21–236:4; Schoar Liability Report (Ex. 269-A); Schoar Rebuttal Report (Ex. 269-B) § V.A–B.

- FleetCor's memory expert testified that the FTC's expert survey actually shows that FleetCor customers *were* informed of applicable fees and policies when they enrolled in their fuel card program. *See* Kahana Rebuttal Report (Ex. 268-A) ¶¶ 42–45.

- According to FleetCor's expert, MIT Professor Antoinette Schoar, FleetCor customers received the exact savings advertised to them. *See* Schoar Rebuttal Report (Ex. 269-B) ¶¶ 114–19.

- FleetCor's products and fee structure provide tremendous value to customers, particularly small- and medium-sized business customers. *See* Schoar Liability Report (Ex. 269-A) ¶¶ 46–91.

- FleetCor does not charge a late fee based on timely, conforming payments. *See* Pisciotta Dep. (Ex. 290) at 10:16–21:02; Pisciotta

Decl. (Ex. 275) ¶¶ 4–13; Schoar Rebuttal Report (Ex. 269-B) ¶¶ 98–99.

- Despite the fact that the FTC relies on anecdotal customer complaints, empirical analysis shows that FleetCor has an extremely low complaint rate and an "A" rating from the Better Business Bureau.  *See* Complaint Analysis of C. Freund (Ex. 1 App. C).

- The FTC rely on testimony from two third-party witnesses (a former FleetCor employee and a KwikTrip employee) that relay their understanding of FleetCor policies.  FleetCor's witnesses deny making these statements and deny the FTC's witness testimony is accurate.  Cockrell Decl. (Ex. 273) ¶¶ 4–7; Chen Decl. (Ex. 272) ¶¶ 26–33; Leidenfrost Decl. (Ex. 274) ¶¶ 4–5.

This evidence is more than enough to present triable questions of fact on each of the FTC's claims.  The FTC's motion to exclude Professor Wind, therefore, is not only meritless but futile at this stage:  With or without Professor Wind's opinions in the case, the FTC is not entitled to summary judgment.  In the interests of judicial economy, the Court should hold this motion in abeyance and consider it as a pre-trial motion *in limine*, in conjunction with FleetCor's motions to exclude opinion testimony offered by the FTC.

## **BACKGROUND**

In this case, Professor Wind has offered a number of opinions based on both quantitative and qualitative analyses, only a few of which the FTC even challenges in their motion.  Professor Wind's opinions include:

- **Consumer Survey:**  Professor Wind conducted a test-versus-control empirical survey of 1,024 actual FleetCor customers.  The results of this survey showed that "only a small percentage of customers misunderstand the fee, discount, cost, or fraud control

terms" of their fuel card; that enhanced disclosures (the control group in Professor Wind's study) "could not decrease the level of misunderstanding"; and that the overwhelming majority of FleetCor customers "knew where to find additional information about their fuel card."  Wind Report (Ex. 1) ¶¶ 110–26.

- **Natural Experiment:**  Professor Wind analyzed the results of a natural experiment arising from FleetCor's distribution of enhanced terms and conditions.  The results show that FleetCor customer behavior did not change after the company sent an enhanced disclosure of fees and terms.  Professor Wind explained that this evidence is inconsistent with the FTC's theory that customers were unaware of these fees and terms.  *Id.* ¶¶ 127–38.

- **Analysis of Customer Complaints and Calls:**  Professor Wind analyzed all of the customer service calls and all of the complaints produced in this litigation.  This empirical analysis found that FleetCor's rate of customer complaints is among the *lowest* in the financial services industry and that there are a very small number of complaints related to the issues in the FTC's complaint.  *Id.* ¶¶ 139–51; *see also id.* ¶¶ 256–61 (discussing FleetCor's high customer satisfaction as expressed through a net promoter score).

- **Customer Journey:**  Based upon his review of FleetCor's go-to-market strategy and FleetCor's choice architecture, Professor Wind concluded that FleetCor's marketing, post-sign up disclosures, sales training, compliance programs, and advertising and disclosure techniques are reasonable and industry standard.  *Id.* ¶¶ 152–209, 224–31.

- **Consumer and Third-Party Behavior:**  Professor Wind found that FleetCor's high retention, low attrition, high referral rate, and consistent demand and usage are inconsistent with the allegations that FleetCor customers are deceived customers or treated them unfairly.  Wind Report (Ex. 1) ¶¶ 224–75, 297–306.

Although each of these analyses independently provides strong evidence of no consumer deception, Professor Wind observed that the convergence of these measures further validates his findings.  *See id.* ¶¶ 101–03.

On April 16, 2021, the FTC moved for summary judgment.  Pl.'s Mot.

Summ. J. (ECF No. 122).  In its opposition and cross-motion, FleetCor argued

that the FTC's failure even to acknowledge Professor Wind meant the FTC

could not meet its burden to "show affirmatively the absence of a genuine

issue of material fact."  FleetCor Cross-Mot. & Opp. 1, 11, 13–14 (quoting

*Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993)).  Now,

concurrent with (and as part of) its summary judgment *reply*, the FTC moved

to exclude some of Professor Wind's opinions.  *See* ECF No. 171.

## LEGAL STANDARD

Under Rule 702 and *Daubert*, there is a liberal standard for the

admissibility of expert testimony and the exclusion of expert testimony is

"the exception rather than the rule."  Fed. R. Evid. 702 advisory committee's

note to 2000 amendment.  The Eleventh Circuit has prescribed a three-part

inquiry under *Daubert*: "(1) [whether] the expert is qualified to testify

competently regarding the matters he intends to address; (2) [whether] the

methodology by which the expert reaches his conclusions is sufficiently

reliable ...; and (3) [whether] the testimony assists the trier of fact, through

the application of scientific, technical, or specialized expertise, to understand

the evidence or to determine a fact in issue."  *United States v. Frazier*, 387

F.3d 1244, 1260 (11th Cir. 2004) (en banc).  In considering these factors, the

focus is on "principles and methodology, not on the conclusions that they

generate." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)).

Any objections to the weight, credibility, persuasiveness, or factual support of an expert or an expert report are not proper grounds for exclusion under *Daubert*.  *See, e.g.*, *United States v. Reddy*, 534 F. App'x 866, 871 (11th Cir. 2013); *Quiet-Tech DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341–42 (11th Cir. 2003).  Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  *Daubert*, 509 U.S. at 596.  In particular, where (as here) a party challenges opinions based on a study, such objections "are more appropriately considered an objection going to the weight of the evidence rather than its admissibility." *Reddy*, 534 F. App'x at 871 (quoting *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1188 (9th Cir. 2002)).

The already-liberal standards for the admissibility of expert evidence are even more relaxed in a bench trial, where a judge serves as the factfinder. *See, e.g.*, *FTC v. Direct Benefits Grp., LLC*, No. 6:11-cv-1186-Orl-28TBS, 2012 WL 5430989, at *4 (M.D. Fla. Nov. 7, 2012) (in action under Section 5 of the FTC Act, "all issues will be determined by the Court following a bench trial"). "There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for [her]self."  *United States v. Brown*, 415 F.3d 1257,

1268–69 (11th Cir. 2005); *accord, e.g.*, *Fuller v. SunTrust Banks, Inc.*, No.

1:11-CV-784-ODE, 2019 WL 5448206, at *18 (N.D. Ga. Oct. 3, 2019).

## ARGUMENT

### I.   The FTC's Challenges to Professor Wind's Conclusions Are Meritless.

The FTC takes issue with a number of Professor Wind's conclusions.

This section addresses each of those in turn and shows why the FTC's motion

fails under the liberal Rule 702 standard.

#### A.   The FTC Misunderstands Professor Wind's Opinion on Customer Buying Centers.

First, the FTC challenges one piece of Professor Wind's opinion that

"FleetCor's [customers] are relatively sophisticated purchasers" and that "the

decision to purchase a fuel card is made by a professional buyer" that is

"experienced at making business purchase decisions and are very likely to

pay attention to FleetCor's disclosed terms." *See, e.g.*, Wind Report (Ex. 1)

¶¶ 3, 38, 100.  This opinion refutes the FTC's unsupported allegation that

FleetCor's fuel card customers (all of whom are businesses ranging from sole

proprietorships to multibillion dollar corporations) are unlikely to read or

understand FleetCor's disclosures.  *See also* Schoar Liability Report (Ex. 269-

A) ¶ 44 (even "small and medium business owners are, on average, more

financially literate than retail consumers").

The FTC does not and cannot challenge that Professor Wind is qualified to offer an opinion on business buying centers.  Professor Wind is the pioneer of the field of business "buying centers," also referred to as business-to-business marketing.  Professor Wind founded the theory of buying centers in his 1966 dissertation, and he has developed and shaped this important field of research over the past fifty years.  *See, e.g.*, Robert J. Thomas, *Volume Introduction*, *in* 1 LEGENDS IN MARKETING: YORAM (JERRY) WIND, at xlii (Jagdish N. Sheth & Robert J. Thomas eds., 2014).

Nor does the FTC contend that Professor Wind's conclusions—which are based upon his own research, review of FleetCor materials, and an empirical survey—are not "the product of reliable principles and methods." Fed. R. Evid. 702.  Rather, the FTC contends that Professor Wind's opinions about the profile of FleetCor's business customers are "inconsistent" with one factor he relied on in reaching that opinion.   Specifically, the FTC argues that Professor Wind's survey did not show that FleetCor customers make purchasing decisions in "buying centers," Pl.'s Mem. of Law Supp. Mot. to Exclude Expert Test. of Yoram (Jerry) Wind ("FTC Mot.) 3–5 (ECF No. 172-1), because only 36% of respondents said that "more than one person [was] involved in purchase decision," Wind Report (Ex. 1) ¶ 58.

At the outset, the FTC's argument is nothing more than a semantic quibble.  Professor Wind uses the term "buying center" to refer to business—

as opposed to consumer—procurement process. *See, e.g.*, Wind Report (Ex. 1) ¶ 40 (describing "buying center" research as "a fundamental and enduring concept to better understand how to market to organizations, and how the procurement function can be better managed from within a buying organization"). "The buying center literature applies to any organization or business regardless of its size." Wind Reply Report (Ex. 3) ¶ 3.[3]

More fundamentally, this is not a *Daubert* argument because purported "contradictions or concessions [in an expert's opinions] should go toward the weight of the evidence put forth by the expert, not toward its admissibility." *Exim Brickell LLC v. Bariven, S.A.*, No. 09-CV-20915, 2011 WL 13131317, at *5 (S.D. Fla. Mar. 11, 2011); *accord, e.g.*, *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 174 (S.D.N.Y. 2018); *CTC Commc'ns Corp. v. Bell Atl. Corp.*, 77 F. Supp. 2d 124, 143 (D. Me. 1999); *Tapatio Springs Builders, Inc. v. Md. Cas. Ins. Co.*, 82 F. Supp. 2d 633, 648 (W.D. Tex.

---

[3] Professor Wind made clear that his conclusion was based not only on his survey but on "academic research and professional work on the topic that began in 1965 and has continued for the past 55 years, FleetCor's internal research, and [his] study." Wind Reply Report (Ex. 3) ¶ 31. On the particular question of why less than a majority of respondents said that "more than one person" was involved in the purchase decision, Professor Wind suggested this number is underinclusive because, based on his decades of experience, he has found respondents interpret this question as involving only "the final decision," and might not have considered other consultation as buying center activity. *See* Wind Dep. (Ex. 4) at 135:10–140:5.

1999).  Therefore, even if credited, this supposed inconsistency is not a basis to exclude Professor Wind's buying center opinion.

The FTC's further characterization of this opinion as "ipse dixit" is without merit.  FTC Mot. 5.  Professor Wind explained in detail in two separate reports and at his deposition the many bases for his buying center opinion and interrelated opinions about the profile of FleetCor's customer base.  These bases included not only the survey he conducted in this case but his half-century as the unquestioned leader in this field of research.  *See* Wind Reply Report (Ex. 3) ¶ 31.  As the Court has previously recognized, expert testimony is not *ipse dixit* when it is based on the expert's experience and training, *see Guinn v. Norfolk S. Ry.*, 441 F. Supp. 3d 1319, 1332 (N.D. Ga. 2020), or when it based on a review of relevant source materials, *see Pace v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 1:12-CV-3096-AT, 2014 WL 4976773, at *7 (N.D. Ga. Aug. 21, 2014).

## B.   The FTC's Disagreements with a Few Technical Choices in Professor Wind's Survey Are No Basis for Exclusion.

The FTC next raises a series of objections to the design and details of Professor Wind's consumer survey.  *See, e.g.*, FTC Mot. 5 ("poorly worded questions"); *id.* at 6 ("flawed survey questions"); *id.* at 8 ("skewed response options"); *id.* at 13 ("flawed" control).  However, courts have consistently held that such technical challenges "are more appropriately considered an

12

objection going to the weight of the evidence rather than its admissibility."
*Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011)
(quoting *Hemmings*, 285 F.3d at 1188); *accord, e.g.*, *Reddy*, 534 F. App'x at
871; *Jellibeans, Inc. v. Skating Clubs of Ga., Inc.*, 716 F.2d 833, 844–45 (11th
Cir. 1983); *Smith v. Wal-Mart Stores, Inc.*, 537 F. Supp. 2d 1302, 1334 (N.D.
Ga. 2008).[4]  Indeed, in its lengthy nitpicking of Professor Wind's survey
design choices, *see* FTC Mot. 5–16, the FTC cites not a single case excluding
expert opinion on the grounds the FTC advances.  While FleetCor is confident
that Professor Wind's survey design is appropriate and his conclusions sound,
that is a question for trial.  At this stage, the FTC's critiques can be easily
rejected because these challenges all go to the weight, not the admissibility.

First, the FTC's attacks on Professor Wind's surveys are just the
opinions of counsel.  If the FTC wanted to challenge the wording of Professor
Wind's survey questions, it should have had an expert provide a critique or
run an analysis to show that these word choices made a difference.  But the
FTC did not do so.  The only actual evidence is Professor Wind's undisputed
testimony that his survey exceeds all relevant standards of survey design.

---

[4] *See also, e.g.*, *Combe Inc. v. Dr. Aug. Wolff GMBH & Co. KG Arzneimittel*,
No. 19-1674, 2021 WL 1384750, at *8 (4th Cir. Apr. 13, 2021); *1-800 Contacts,
Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1246 (10th Cir. 2013); *Atl. Allergy &
Asthma Clinic, P.A. v. Allergy & Asthma of Atl., LLC*, 685 F. Supp. 2d 1360,
1373–75 (N.D. Ga. 2010); *In re Arris Cable Modem Consumer Litig.*, 327
F.R.D. 334, 372 (N.D. Cal. 2018).

Second, Professor Wind's survey employed standard question wording. For each of the four key questions, Professor Wind presented respondents with the correct answer, the incorrect answer, and don't know/don't recall answers.  The survey showed that only a very small percentage of respondents got the answer wrong, and that even with enhanced disclosures the percentage of wrong answers did not go down.  From this and several other analyses, Professor Wind concluded that FleetCor customers were not deceived.  While the FTC objects to the wording in these questions as "overly narrow," FTC Mot. 8, Professor Wind made clear that these questions followed standard research practices.  *See* Wind Rebuttal Report (Ex. 2) ¶ 59; Wind Reply Report (Ex. 3) ¶ 26.

In addition, the FTC's only real attack on Wind's questions is limited: The FTC argues the wording was too narrow because it does not go to the issue of express informed consent.  *See e.g.*, FTC Mot. 7–12.  The FTC does not dispute that the questions properly address the issue of deception.  *See* Wind Report (Ex. 1) ¶ 110 ("I designed and fielded a survey of actual FleetCor customers to assess whether they were deceived ….").

Third, the FTC misunderstands the role of the "enhanced disclosures" in Professor Wind's survey.  *See* FTC Mot. 13–16.  Professor Wind designed the enhanced disclosures to serve as stimuli for a control group.  *See* Wind Report (Ex. 1) ¶ 118.  As the leading treatise on survey evidence explains, a

14

survey designed to test a causal proposition (*e.g.*, did FleetCor advertising cause customers to have a false net impression?) should have a control group. *See* Shari Seidman Diamond, *Reference Guide on Survey Research*, *in* REFERENCE MANUAL ON SCIENTIFIC EVIDENCE 359, 397–401 (Fed. Jud. Ctr. 3d ed. 2011); *id.* at 399 ("[T]he expert should select a stimulus for the control group that shares as many characteristics with the experimental stimulus as possible, with the key exception of the characteristic whose influence is being assessed."). This is exactly what Professor Wind did in the enhanced disclosures shown to one group of survey respondents. *See* Wind Report (Ex. 1) ¶ 118 (enhanced disclosures "focus[ed] only on the issues raised in the FTC's Complaint"); *cf.* Krosnick Dep. (Ex. __) at 116:8–117:23 (FTC expert admitting "there was no control group in [his] survey").

The FTC complains that the enhanced disclosures were not enhanced enough because the FTC would have written it differently. *See* FTC Mot. 14–15. But that is not a basis for exclusion. The enhanced disclosures were written to get a control for "the terms that [Professor Wind] would test in the survey." Wind Report (Ex. 1) ¶ 118. That the FTC believes Professor Wind should have tested different terms or should have tested the same terms in a different way is not relevant to the admissibility of his survey. The Court should therefore reject the FTC's misdirected challenges.

### C.   The FTC's Challenge to the Natural Experiment Is Improper and Rests on a Series of Misrepresentations.

The FTC next seeks to exclude Professor Wind's opinions concerning a "natural experiment" of actual customer behavior where Professor Wind studied "how FleetCor customers reacted to enhanced Terms and Conditions from the company."  Wind Report (Ex. 1) ¶¶ 127–38.  The FTC does not challenge Professor Wind's qualifications or his methodology, nor does it dispute Professor Wind's opinion that a natural experiment is "among the most powerful forms of evidence because it is conducted in the ordinary course of a company's business, uses real customers as they act in the marketplace, and the choices made by customers have real consequences for them."  *Id.* ¶ 127; *see also Surveying American Public Opinion on Climate Change and the Environment, with Jon Krosnick*, Resources Radio (Aug. 25, 2020), https://bit.ly/3khkaWS (FTC's expert agreeing natural experiments are "the strongest evidence that we can generate in science").  Instead, the FTC takes issue with supposed "assumptions" in Professor Wind's analysis.  *See* FTC Mot. 13.  As with the FTC's other challenges to Professor Wind's opinions, the FTC's argument is not a basis to exclude expert testimony.

The FTC does not cite a single case holding that an expert's opinion can be excluded based on disagreements with supposed assumptions underlying an experiment.  That is because the law in this Circuit is that "contentions

that the assumptions are unfounded go to the weight, not the admissibility, of the testimony" unless those assumptions "are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison." *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 245 F. Supp. 3d 1343, 1361 (N.D. Ga. 2017) (quoting *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (per curiam)), *aff'd sub nom. Siegel v. Delta Air Lines, Inc.*, 714 F. App'x 986 (11th Cir. 2018).[5]

In any event, the FTC is wrong that the Professor Wind made any erroneous assumptions. First, although the FTC asserts that Professor Wind incorrectly assumed that customers actually read the terms and conditions, *see* FTC Mot. 16, in reality Professor Wind was clear that his analysis did *not* depend on that assumption. When asked whether it would affect his opinion whether customers actually read the enhanced terms and conditions, he was clear: "No. · Because it's their choice. … I think the important thing is we make it available, those who want will use it, and everyone has an option to

---

[5] *Accord, e.g.*, *United States v. 0.161 Acres of Land*, 837 F.2d 1036, 1040 (11th Cir. 1988) (expert witness's opinion admissible "even though his assumptions do not include [all relevant] evidence"); *ITT Corp. v. Xylem Grp., LLC*, 963 F. Supp. 2d 1309, 1333 (N.D. Ga. 2013) (criticism of "the assumptions on which [the expert's] opinion is based … affect the weight of [the expert's] opinion rather than its admissibility"); *see also McSwain v. World Fuel Servs. Corp.*, No. 1:20-CV-21203, 2021 WL 2682269, at *5 (S.D. Fla. June 30, 2021) (the assumptions underlying an expert's opinions goes to weight, "even though those assumptions may well be unrealistic or even foolish").

agree.  If they disagree, they can basically call and ask for clarification and information."  Wind Dep. (Ex. 4) at 144:8–145:14.  The FTC's argument fabricates an erroneous assumption.

Even if Professor Wind were to bases his opinions on an assumption that customers did read those terms, he would have a reasonable basis for that conclusion.  As Professor Wind's report shows, when customers were presented with the enhanced Terms and Conditions, they could agree to them only if they made the following assertion: "I confirm that I have READ and AGREE to the Terms and Conditions(s) including fees …."  Wind Report (Ex. 1) ¶ 130 (fig. 24); *see also id.* ¶ 131 (fig. 25).  Customers' affirmative statements, in overwhelming numbers, that they read the terms and conditions provide a reasonable basis to conclude that they did so.

Rather than engage with this, the FTC misleadingly points to an interrogatory response about a *different* website from a *different* time period, for *different* Terms and Conditions to suggest that customers did not read the enhanced Terms and Conditions.  *See* FTC Mot. 17; *cf.* FleetCor's Resps. & Objs. to Pl. FTC's Fourth Set of Interrogs. (Ex. 264), at Resp. to Interrog. No. 13.  The FTC tells the Court that this interrogatory response says that "only 13% of customers" clicked through to the terms and conditions.  FTC Mot. 17. This interrogatory response actually says: "FleetCor does not have access to comprehensive information showing the number of customers that click on

18

the Terms and Conditions on its websites," and the 13% number is the

**minimum** number of clicks that can be calculated during that time period.

Def. FleetCor's Resps. & Objs. to Pl. FTC's Fourth Set of Interrogs. (Ex. 264),

at Resp. to Interrog. No. 13.  Moreover, during the actual time period at

issue—when the enhanced terms and conditions were distributed—the

minimum rate of completed applications to click-through reached as high as

83%.  *See id.* (providing data for September 2020).

Second, the FTC attacks the enhanced disclosures as "deficient,"

because they were not enhanced enough.  FTC Mot. 17–18.  But the FTC's

own expert admitted that the enhanced fee disclosure were "an improvement"

and would "help customers understand the terms [and] fees."  *See* Morwitz

Dep. (Ex. __) at 365:25–369:9.  Moreover, Professor Wind explained in detail,

*see infra* § I.D, why the enhanced disclosures were a sufficient basis for a

natural experiment.  *See, e.g.*, Wind Report (Ex. 1) ¶¶ 127–31, 177.  Again,

the FTC has no *evidence* to conclude the enhanced disclosures were

insufficient because it did not test them and it did not designate an expert to

opine on them.  At most, their argument goes to the weight of the evidence.

### D.   Professor Wind's Analysis of FleetCor's Go-to-Market Strategy Is Reliable and Helpful to the Court.

The FTC next seeks to exclude a portion of Professor Wind's opinions,

based on a brief and conclusory argument that Professor Wind's analysis of

FleetCor's go-to-market strategy and fee disclosure methods are "unhelpful" because the Court "does not need an expert to interpret FleetCor's customer-facing material." FTC Mot. 18–19.

Once more, the FTC does not and cannot challenge Professor Wind's qualifications as an expert on these topics. Nor does the FTC challenge the detailed methodology used in analyzing FleetCor's customer facing material. Instead, the FTC merely labels it as non-expert testimony by mischaracterizing Professor Wind's opinions.

This case is about FleetCor's advertising and disclosures practices to its business customers. It would be helpful for the trier of fact to have Professor Wind's expert testimony about those practices based upon his review of tens of thousands of different advertisements and many thousands of different disclosure documents. Professor Wind offers testimony from a customer behavior perspective: how FleetCor customers research fuel cards, what sources of information FleetCor customers rely on when making a fuel card decision, how FleetCor customers go through options and make fuel card purchase decisions. FleetCor is confident that it can present this testimony at trial in a way that is useful to the Court. The FTC's two-paragraph dismissal of this analysis falls far short of its burden under Rule 702.

### E.     Professor Wind Does Not Offer Legal Conclusions.

Finally, the FTC argues that Professor Wind offers "impermissible legal conclusions" because he concludes that respondents to his survey were not deceived and that FleetCor's advertising, marketing, and sales policies are not likely to deceive.  *See* FTC Mot. 19–21.  Neither are legal conclusions.

Professor Wind never offers testimony about "deception" as a legal term.  He never relies on any of the legal sources that define deception, and he never purports to apply law to fact.  *See, e.g.*, *United States v. McIver*, 470 F.3d 550, 561–62 (4th Cir. 2006) (expert's opinion is an impermissible legal conclusion only if it "draws a legal conclusion by applying law to the facts").  Professor Wind uses the term "deception" from a marketing perspective, in which the term is well established.  *Gaylor v. Ga. Dep't of Nat. Res.*, No. 2:11-CV-288-RWS, 2014 WL 4545810, at *7 (N.D. Ga. Sept. 12, 2014) (considering whether term has "meaning in the law different from that present in the vernacular").  It is quite common that, when an area of law and a field of expertise share common verbiage, experts may testify about the topic from their area of expertise.  *See, e.g.*, *United States v. Johnston*, 322 F. App'x 660, 667 (11th Cir. 2009) (per curiam) ("standard of care"); *Camacho v. Nationwide Mut. Ins. Co.*, 13 F. Supp. 3d 1343, 1366 (N.D. Ga. 2014) ("duties … owed" and "compli[ance] with those duties"); *Pledger v. Reliance*

*Tr. Co.*, No. 1:15-CV-4444-MHC, 2019 WL 4439606, at *13–14 (N.D. Ga. Feb. 25, 2019) ("prudent man").  That is exactly what Professor Wind did here.[6]

In fact, the FTC itself regularly seeks to introduce expert survey evidence that customers were deceived, misled, or confused in Section 5 cases.  And in cases alleging deception or likely deception of consumers, courts permit and even often *require* " 'evidence of deception' in the form of consumer surveys, market research, expert testimony, or other evidence." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1261 (11th Cir. 2004); *see also Diamond Resorts Int'l, Inc. v. Aaronson*, 371 F. Supp. 3d 1088, 1105 (M.D. Fla. 2019) ("Evidence of deception must be in the form of consumer surveys, market research, expert testimony, or other evidence.").  The FTC's argument should be rejected.

## II.  If Not Summarily Denied, the FTC's Motion Should Be Held in Abeyance.

For the reasons explained above, the FTC's *Daubert* motion is meritless and should be denied in its entirety.  But the Court need not decide the motion at all at this juncture for two reasons.

---

[6] This rule has particular force in a bench trial because there is no danger that the expert will "usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it."  *Coyote Portable Storage, LLC v. PODS Enters., Inc.*, No. 1:09-CV-1152-AT, 2011 WL 1870593, at *4 (N.D. Ga. May 16, 2011).

First, the FTC filed its motion to exclude too late to be considered at summary judgment.  Although the FTC asks the Court to consider its challenge to Professor Wind's testimony for purposes of summary judgment, *see* FTC MSJ Reply 6 n.5, the law is well established that a party cannot introduce a new argument—including a new argument challenging the admissibility of an expert's opinions—in a reply brief.  *See, e.g.*, *SEC v. Avent*, No. 1:16-CV-2459-SCJ, 2018 WL 8996270, at *3 (N.D. Ga. Mar. 15, 2018) (refusing to consider challenges to an expert's methodology); *cf. Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 682–83 (11th Cir. 2014).

Courts enforce this rule to prevent either party from holding an argument back until the opposing party no longer has a chance to respond on the merits.  *See, e.g.*, *United States ex rel. Fox Rx, Inc. v. Omnicare, Inc.*, No. 1:11-cv-962-WSD, 2014 WL 2158412, at *4 n.9 (N.D. Ga. May 23, 2014) (considering an argument raised at the reply stage "would deprive the [c]ourt of meaningful briefing on the issue"); *Ga. Power Co. v. Sure Flow Equip., Inc.*, No. 1:13-CV-1375-LMM, 2016 WL 3870080, at *5 (N.D. Ga. Feb. 17, 2016) ("[G]iven that this argument was not raised in its initial motion and Georgia Power was not afforded an opportunity to respond, the Court need not consider it.").  It would be form over substance to allow the FTC to circumvent this well-established rule simply by breaking its *Daubert* challenge into a different motion.

The FTC had no basis to sit on its challenge to Professor Wind's opinions until after FleetCor had filed its brief in response to the FTC's motion.  The FTC knew the substance of Professor Wind's conclusions months before it sought summary judgment, and as a movant bearing the burden of proof, it was required to "show *affirmatively* the absence of a genuine issue of material fact."  *Fitzpatrick*, 2 F.3d at 1115 (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc)).  The FTC was therefore required in its opening brief to show that Wind's opinions either were inadmissible or were not in conflict with the FTC's claims.

Second, the Court does not have to decide the FTC's motion to exclude now to resolve the pending cross-motions for summary judgment.  As noted above (at 4–5) and explained at length in FleetCor's opposition to the FTC's Motion for Summary Judgment (ECF No. 161-1), there are many material disputes of fact that preclude granting the FTC's motion—even without Professor Wind's testimony.  Although Professor Wind's opinions are a sufficient basis to deny the FTC's motion for summary judgment, those opinions are not necessary.  On each of the FTC's claims, there is other expert testimony, fact testimony, admissible documents, and concessions from FTC witnesses that also require denial of the FTC's motion.  Therefore, for the interests of judicial economy, the Court should hold the FTC's motion to exclude in abeyance and consider it with other pretrial motions, including

FleetCor's forthcoming motions to exclude the FTC's improper expert opinion testimony.

## CONCLUSION

For the foregoing reasons, the motion should be denied or held in abeyance for consideration with other pretrial *Daubert* motions.

Dated:  July 12, 2021                    Respectfully submitted,

                                         /s/ Mark D. Hopson
John Villafranco                         Mark D. Hopson, *pro hac vice*
Jaimie Nawaday                           Benjamin M. Mundel, *pro hac vice*
Levi M. Downing                          Daniel J. Hay, *pro hac vice*
KELLEY DRYE & WARREN LLP                 SIDLEY AUSTIN LLP
3050 K Street, N.W.                      1501 K Street, N.W.
Washington, D.C. 20007                   Washington, DC 20005
Tel: (202) 342-8400                      Tel:  (202) 736-8048
Fax: (202) 342-8451                      Fax: (202) 736-8711
jvillafranco@kelleydrye.com              mhopson@sidley.com
jnawaday@kelleydrye.com                  bmundel@sidley.com
ldowning@kelleydrye.com                  dhay@sidley.com
*Counsel for Ronald Clarke*              *Counsel for FleetCor Technologies, Inc.*

                                         Michael A. Caplan, Ga. Bar No. 601039
                                         Jessica A. Caleb, Ga. Bar No. 141507
                                         CAPLAN COBB LLP
                                         75 Fourteenth Street, N.E.
                                         Suite 2750
                                         Atlanta, Georgia 30309
                                         Tel: (404) 596-5600
                                         Fax: (404) 596-5604
                                         mcaplan@caplancobb.com
                                         jcaleb@caplancobb.com
                                         *Counsel for All Defendants*